NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 1 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| B12 CONSULTING, LLC, | No. 22-56214 |
| Plaintiff-Appellee, | D.C. No. 8:20-cv-01773-JVS-JDE |
| v. | |
| UST GLOBAL, INC., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted February 8, 2024
Pasadena, California

Before: WARDLAW, FRIEDLAND, and SUNG, Circuit Judges.

B12 Consulting, LLC ("B12") and UST Global, Inc. ("UST") entered into a

Subcontractor Master Services Agreement on September 1, 2014 (the "2014

MSA"). B12 sued UST for breach of the 2014 MSA after it failed to pay invoices

related to Statements of Work ("SOWs") that B12 asserts are governed by the 2014

MSA. After a three-day trial, a jury returned a verdict for B12 and awarded

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

$1,541,142.51 in damages. The sole witness at trial was B12's co-founder, Shouvik Bhattacharyya. UST called no witnesses.

On appeal, UST contends that it is entitled to judgment as a matter of law because the SOWs unambiguously do not arise under the 2014 MSA and because substantial evidence does not support the jury's verdict. UST also argues that it cannot be liable for a subset of the invoices because they cover work done outside the start and end dates listed on the associated SOWs. In the alternative, UST contends that it is entitled to a new trial because of a partially redacted exhibit and because of B12's closing argument.

1. As a threshold matter, B12 contends that we lack jurisdiction over part of this appeal because UST's notice of appeal referenced only the final judgment, not the district court's later order denying UST's post-trial motions under Federal Rules of Civil Procedure 50(b) and 59.

"We determine our own jurisdiction de novo." *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 716 (9th Cir. 2003). A notice of appeal must "designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). "Rule 3's dictates are jurisdictional in nature," so "noncompliance is fatal to an appeal." *Smith v. Barry*, 502 U.S. 244, 248 (1992). But courts "liberally construe the requirements of Rule 3" such that "when papers are technically at variance with the letter" of the rule, "a court may nonetheless

find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Id.* (quotation marks omitted).

"When a party seeks to argue the merits of an order that does not appear on the face of the notice of appeal," we ask "(1) whether the intent to appeal a specific judgment can be fairly inferred and (2) whether the appellee was prejudiced by the mistake." *West v. United States*, 853 F.3d 520, 523 (9th Cir. 2017) (quotation marks omitted). "Pursuant to this functional approach, we have considered appeals from orders that weren't named in the [notice of appeal] and were discussed only in appellate briefs. In these cases, the appellants' intent to appeal the otherwise unnamed orders were clear from their briefs. The appellees suffered no prejudice because they had opportunities to respond in their answering briefs." *Id.* at 524 (citations omitted).

UST's intent to appeal the order denying judgment as a matter of law or a new trial was clear from the arguments in its opening brief, and B12 was not prejudiced because it addressed UST's arguments in its answering brief. We therefore have jurisdiction.[1]

2. UST contends that it is entitled to judgment as a matter of law because

---

[1] B12 also contends that UST was required to file an amended notice of appeal under Federal Rule of Appellate Procedure 4(a)(4)(B)(ii). But that provision requires either a timely notice of appeal *or* a timely amended notice of appeal. UST filed a timely notice of appeal after the district court denied its post-trial motions, so it did not also need to file an amended notice of appeal.

the SOWs refer to other agreements and, therefore, are unambiguously not governed by the 2014 MSA.[2] We disagree.

We review the denial of a Rule 50(b) motion for judgment as a matter of law de novo. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003). Contract interpretation is a question of law that we review de novo. *Milenbach v. C.I.R.*, 318 F.3d 924, 930 (9th Cir. 2003).

Under California's parol evidence rule, "[e]xtrinsic evidence always may be introduced initially in order to show that . . . seemingly clear language . . . actually embodies a latent ambiguity," and "[o]nce shown, such ambiguity may be resolved by extrinsic evidence." *In re Est. of Russell*, 444 P.2d 353, 358 (Cal. 1968). California law recognizes a latent ambiguity where "no person or thing exactly answers" the description in a contract, but "two or more persons or things in part though imperfectly do." *Id.* (quotation marks omitted).

The SOWs at issue in this case feature such latent ambiguities. The "Spain"

---

[2] B12 contends that UST forfeited this argument by failing to raise it in its Rule 50(a) motion before the district court. UST responds that it preserved the argument for appellate review at summary judgment, even if it was not raised in the Rule 50(a) motion, because it is a question of law under *Dupree v. Younger*, 598 U.S. 729 (2023). We need not reach this *Dupree* argument because UST did raise this argument in its Rule 50(a) motion, if only barely, when it argued that "[o]n their face, none of the Statements of Work for the Spain Invoices were agreed by the parties to be governed by the 2014 MSA" and that "[o]n their face, the Statements of Work for the Media Services Invoices are *not* specifically governed by the 2014 MSA."

SOWs refer to a January 22, 2015, agreement between B12 and "UST Global/Spain" or "UST Spain." The "Media Services" SOWs refer to a January 7, 2013, agreement between B12 and UST. There is no evidence that those other agreements exist, so the SOWs are ambiguous as to which agreement governs.

Under California law, interpretation of an ambiguous contract is a question of fact. *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1077 (9th Cir. 2010). It was therefore proper for the district court to let the jury decide whether UST had breached the 2014 MSA by failing to pay invoices related to the SOWs.

3. UST also contends that the jury's verdict that UST breached the 2014 MSA is unsupported by substantial evidence. We uphold the jury's verdict "if there is 'evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). Here, substantial evidence supports the jury's conclusion that UST breached the 2014 MSA by failing to pay invoices related to both sets of SOWs. Bhattacharyya's testimony, the lack of evidence of other signed MSAs corresponding to the SOWs, and information on the invoices support the conclusion that UST's failure to pay for B12's services performed under the SOWs breached the 2014 MSA.

Panel                                          5

4. UST next contests the jury's special verdict that the 2014 MSA required UST to pay for work even if it was done outside the start and end dates on an SOW. The 2014 MSA is ambiguous in this respect. Only the blank SOW template attached to the MSA refers to start and end dates. That template does not have room for detail about the work to be performed, and other features of the template suggest that an SOW is only required for each subcontractor, not for each time period during which work will be performed. For instance, the SOW template ensures that the subcontractor has undergone a background check and is authorized to work in the United States, if relevant. The question whether the 2014 MSA requires UST to pay for work done outside the time range on an SOW was also therefore properly submitted to the jury.

Substantial evidence supports the jury's special verdict that the 2014 MSA requires UST to pay for work done outside the time range identified on an SOW. Bhattacharyya testified that the start and end dates were "approximate," and there is evidence that UST signed at least one SOW a month after its listed start date, which suggests that the parties understood that the dates did not strictly limit UST's obligation to pay.

5. In the alternative, UST contends that it is entitled to a new trial based on the admission of a partially redacted exhibit and statements made by B12's counsel during closing. We review denial of a motion for a new trial for abuse of

discretion.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007).  We review evidentiary rulings for abuse of discretion and reverse "only if such error 'more likely than not affected the verdict.'" *United States v. Schales*, 546 F.3d 965, 976 (9th Cir. 2008) (quoting *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004)).

Exhibit 20 was partially redacted pursuant to UST's own request to exclude evidence of other disputes between UST and B12 or Bhattacharyya.  UST urges that B12 misled the jury by characterizing the exhibit as an acknowledgment that UST owed B12 money.  But that is an accurate characterization of the unredacted portion, it is not belied by the redacted material, and the district court instructed the jury not to speculate about the redactions.  The district court did not abuse its discretion in admitting the exhibit or in denying a new trial related to that exhibit.

B12's counsel's rebuttal closing argument referenced Exhibit 29, a settlement agreement between UST and another company that had not been referenced during the presentation of evidence.  UST objected before the district court on the ground that although Exhibit 29 was "in evidence" by stipulation, "[t]he explanation of the exhibit [was] not."

UST has not identified any inappropriate explanation of Exhibit 29 in B12's counsel's rebuttal.  Counsel may suggest reasonable inferences from evidence before the jury.  *See United States v. Patel*, 762 F.2d 784, 795 (9th Cir. 1985).

B12's counsel permissibly suggested to the jury only that if UST was the party responsible for paying invoices for the two contractors identified in Exhibit 29, it was likely also the party responsible for paying other invoices for the same two contractors that were at issue in this case. The district court did not abuse its discretion in denying UST a new trial on the basis of that rebuttal argument.

**AFFIRMED.**